# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S CERTIFICATE AND APPEALS COVER SHEET

## ABBREVIATED ELECTRONIC RECORD

Case Caption: President and Fellows of Harvard College v. Harvard Graduate Students Union - United Autoworkers, Local 5118

District Court Number: 24cv11952-LTS

Fee: Paid? Yes __X__ No _____ Government filer _____ *In Forma Pauperis* Yes _____ No _____

Motions Pending    Yes __X__ No _____     Sealed documents    Yes __X__ No _____
*If yes, document #*    __46__        *If yes, document #*    __27__

*Ex parte* documents    Yes _____ No __X__     Transcripts    Yes _____ No __X__
*If yes, document #*           *If yes, document #*

Notice of Appeal filed by: Plaintiff/Petitioner __X__ Defendant/Respondent _____ Other: _____

Appeal from:

## #43 Order, #44 Judgment

Other information:

     I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

## #43, #44, and #45

with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal # __45__ filed on __June 20, 2025__.

     In testimony whereof, I hereunto set my hand and affix the seal of this Court on __June 22, 2025__.


**ROBERT M. FARRELL**
Clerk of Court


/s/Matthew A. Paine
Deputy Clerk


COURT OF APPEALS DOCKET NUMBER ASSIGNED: _____

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:24−cv−11952−LTS

| | |
|---|---|
| President and Fellows of Harvard College v. Harvard Graduate Students Union − United Autoworkers, Local 5118<br>Assigned to: District Judge Leo T. Sorokin<br>Cause: 29:185 Labor/Mgt. Relations (Contracts) | Date Filed: 07/29/2024<br>Date Terminated: 05/23/2025<br>Jury Demand: None<br>Nature of Suit: 720 Labor: Labor/Mgt. Relations<br>Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **President and Fellows of Harvard College** | represented by | **Robert A. Fisher**<br>Seyfarth Shaw LLP<br>Seaport East<br>Two Seaport Lane<br>Suite 1200<br>Boston, MA 02210<br>617−946−4996<br>Fax: 617−946−4801<br>Email: rfisher@seyfarth.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Abigail Skinner**<br>Seyfarth Shaw LLP<br>Seaport East<br>Two Seaport Lane<br>Suite 1200<br>Boston, MA 02210<br>617−946−8337<br>Fax: 617−946−4801<br>Email: askinner@seyfarth.com<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Harvard Graduate Students Union − United Autoworkers, Local 5118** | represented by | **Patrick N. Bryant**<br>Pyle Rome Ehrenberg, PC<br>2 Liberty Square, 10th Flr.<br>Suite 500<br>Boston, MA 02109<br>617−367−7200<br>Email: pbryant@pylerome.com<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

**Harvard Graduate Students Union –**
**United Autoworkers, Local 5118**

represented by **Patrick N. Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*


V.

**Counter Defendant**

**President and Fellows of Harvard**
**College**

represented by **Robert A. Fisher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 07/29/2024 | 1 | COMPLAINT *TO VACATE ARBITRATION AWARD* against Harvard Graduate Students Union – United Autoworkers, Local 5118 Filing fee: $ 405, receipt number AMADC–10528384 (Fee Status: Filing Fee paid), filed by President and Fellows of Harvard College. (Attachments: # 1 Exhibit 1 – Timeliness Decision, # 2 Exhibit 2 – Merits Decision, # 3 Exhibit 3 – CBA, # 4 Exhibit 4 – Psych Grad Program Acceptance Letter and Funding, # 5 Exhibit 5 – Psych Grad Program Requirements, # 6 Exhibit 6 – Teaching Fellow Appointment Correspondence, # 7 Exhibit 7 – Research Assistant Appointment Correspondence, # 8 Exhibit 8 – Shrage Award, # 9 Civil Cover Sheet, # 10 Category Form)(Fisher, Robert) (Entered: 07/29/2024) |
| 07/29/2024 | 2 | NOTICE of Appearance by Robert A. Fisher on behalf of President and Fellows of Harvard College (Fisher, Robert) (Entered: 07/29/2024) |
| 07/29/2024 | 3 | NOTICE of Appearance by Abigail Skinner on behalf of President and Fellows of Harvard College (Skinner, Abigail) (Entered: 07/29/2024) |
| 07/29/2024 | 4 | CORPORATE DISCLOSURE STATEMENT by President and Fellows of Harvard College. (Skinner, Abigail) (Entered: 07/29/2024) |
| 07/29/2024 | 5 | ELECTRONIC NOTICE of Case Assignment. District Judge Leo T. Sorokin assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Paul G. Levenson. (Cook, Savannah) (Entered: 07/29/2024) |
| 07/29/2024 | 6 | Summons Issued as to Harvard Graduate Students Union – United Autoworkers, Local 5118. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Horvath, Courtney) (Entered: 07/29/2024) |
| 07/31/2024 | 7 | WAIVER OF SERVICE Returned Executed by President and Fellows of Harvard College. Harvard Graduate Students Union – United Autoworkers, Local 5118 waiver sent on 7/29/2024, answer due 9/27/2024. (Fisher, Robert) (Entered: 07/31/2024) |

| 08/16/2024 | 8 | NOTICE of Appearance by Patrick N. Bryant on behalf of Harvard Graduate Students Union – United Autoworkers, Local 5118 (Bryant, Patrick) (Entered: 08/16/2024) |
|---|---|---|
| 08/16/2024 | 9 | ANSWER to 1 Complaint,, , COUNTERCLAIM against All Plaintiffs by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 08/16/2024) |
| 08/21/2024 | 10 | NOTICE of Scheduling Conference: Scheduling Conference set for 9/12/2024 02:15 PM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin.

This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.

Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.

For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.

(Attachments: # 1 Sample Scheduling Order, # 2 Standing Order on Summary Judgment motions)(Dore, Samantha) (Entered: 08/21/2024) |
| 08/23/2024 | 11 | Assented to MOTION to Continue Scheduling Conference to September 13, 16, 23, 25, or 26, 2024 *or another date convenient to the Court* by President and Fellows of Harvard College.(Skinner, Abigail) (Entered: 08/23/2024) |
| 08/23/2024 | 12 | District Judge Leo T. Sorokin: New Civil Cases General Procedural ORDER entered. (Cooke, Melonie) (Entered: 08/23/2024) |
| 08/27/2024 | 13 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 11 Assented to MOTION to Continue Scheduling Conference to September 13, 16, 23, 25, or 26, 2024 or another date convenient to the Court.

ALLOWED. Scheduling Conference set for 9/13/2024 11:00 AM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin. (Dore, Samantha) (Entered: 08/27/2024) |
| 09/05/2024 | 14 | ANSWER to Counterclaim *and Affirmative Defenses* by President and Fellows of Harvard College.(Skinner, Abigail) (Entered: 09/05/2024) |
| 09/11/2024 | 15 | CERTIFICATION pursuant to Local Rule 16.1 *(D)(3)* by President and Fellows of Harvard College.(Fisher, Robert) (Entered: 09/11/2024) |
| 09/11/2024 | 16 | JOINT SUBMISSION pursuant to Local Rule 16.1 *(D)* by President and Fellows of Harvard College.(Fisher, Robert) (Entered: 09/11/2024) |
| 09/11/2024 | 17 | CERTIFICATION pursuant to Local Rule 16.1 by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 09/11/2024) |
| 09/13/2024 | 18 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: |

| | | |
|---|---|---|
| | | Scheduling Conference held on 9/13/2024. The court hears from the parties as to the Joint Scheduling Proposed Order. The court adopts the proposed order. Harvard shall file its motion for summary judgment by October 31, 2024. The Union shall file a single memorandum as its opposition and cross–motion by November 29, 2024. Harvard shall file a single memorandum as its reply by December 20, 2024. The Union shall file a reply memorandum in support of its cross–motion by January 6, 2025.<br><br>(Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: Robert A. Fisher, Abigail Skinner for plaintiffs and Patrick N. Bryant defendant) (Dore, Samantha) (Entered: 09/13/2024) |
| 09/27/2024 | 19 | MOTION to Amend 9 Answer to Complaint, Counterclaim – *Unopposed* by Harvard Graduate Students Union – United Autoworkers, Local 5118. (Attachments: # 1 Exhibit Amended Answer and Counterclaim of Defendant HGSU–UAW Local 5118)(Bryant, Patrick) (Entered: 09/27/2024) |
| 09/30/2024 | 20 | District Judge Leo T. Sorokin ELECTRONIC ORDER entered: re 19 MOTION to Amend 9 Answer to Complaint, Counterclaim – Unopposed<br><br>ALLOWED. (Cooke, Melonie) (Entered: 09/30/2024) |
| 10/01/2024 | 21 | *Amended* ANSWER to 1 Complaint,, , Amended COUNTERCLAIM against President and Fellows of Harvard College by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 10/01/2024) |
| 10/11/2024 | 22 | ANSWER to Counterclaim by President and Fellows of Harvard College.(Fisher, Robert) (Entered: 10/11/2024) |
| 10/31/2024 | 23 | Assented to MOTION to Seal Document *in Support of its Motion for Summary Judgment* by President and Fellows of Harvard College.(Skinner, Abigail) (Entered: 10/31/2024) |
| 10/31/2024 | 24 | MOTION for Summary Judgment by President and Fellows of Harvard College.(Skinner, Abigail) (Entered: 10/31/2024) |
| 10/31/2024 | 25 | MEMORANDUM in Support re 24 MOTION for Summary Judgment filed by President and Fellows of Harvard College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Skinner, Abigail) (Entered: 10/31/2024) |
| 10/31/2024 | 26 | Statement of Material Facts L.R. 56.1 re 24 MOTION for Summary Judgment filed by President and Fellows of Harvard College. (Skinner, Abigail) (Entered: 10/31/2024) |
| 10/31/2024 | 27 | DECLARATION re 24 MOTION for Summary Judgment *Declaration of Robert A. Fisher* by President and Fellows of Harvard College. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15)(Fisher, Robert) (Attachments 1–4 and 6–8 replaced on 11/5/2024) (Dore, Samantha). (Entered: 10/31/2024) |
| 11/05/2024 | 28 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 23 Assented to MOTION to Seal Document in Support of its Motion for Summary Judgment<br><br>ALLOWED (Cooke, Melonie) (Entered: 11/05/2024) |
| 11/25/2024 | 29 | Assented to MOTION for Extension of Time to 12/09/2024 to File Response/Reply as to 25 Memorandum in Support of Motion, 26 Statement of Material Facts L.R. 56.1, |

| | | |
|---|---|---|
| | | 27 Declaration,, 24 MOTION for Summary Judgment *and Cross–Motion* by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 11/25/2024) |
| 11/26/2024 | 30 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 29 Assented to MOTION for Extension of Time to 12/09/2024 to File Response/Reply as to 25 Memorandum in Support of Motion, 26 Statement of Material Facts L.R. 56.1, 27 Declaration, 24 MOTION for Summary Judgment and Cross–Motion <br><br> ALLOWED. Responses due by 12/9/2024. (Cooke, Melonie) (Entered: 11/26/2024) |
| 12/09/2024 | 31 | Cross MOTION for Summary Judgment by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 12/09/2024) |
| 12/09/2024 | 32 | RESPONSE to Motion re 24 MOTION for Summary Judgment *and Memorandum in Support of Defendant's Cross Motion for Summary Judgment* filed by Harvard Graduate Students Union – United Autoworkers, Local 5118. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bryant, Patrick) (Entered: 12/09/2024) |
| 12/09/2024 | 33 | DECLARATION re 31 Cross MOTION for Summary Judgment , 32 Response to Motion, *of Plaintiff's Motion for Summary Judgment* by Harvard Graduate Students Union – United Autoworkers, Local 5118. (Bryant, Patrick) (Entered: 12/09/2024) |
| 12/10/2024 | 34 | Assented to MOTION for Extension of Time to January 6, 2025 to Respond to Defendant's Opposition and Cross–Motion for Summary Judgment by President and Fellows of Harvard College.(Skinner, Abigail) Modified docket text on 12/10/2024 (Cooke, Melonie). (Entered: 12/10/2024) |
| 12/11/2024 | 35 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 34 Assented to MOTION for Extension of Time to January 6, 2025 to Respond to Defendant's Opposition and Cross–Motion for Summary Judgment. <br><br> ALLOWED. (Dore, Samantha) (Entered: 12/11/2024) |
| 01/06/2025 | 36 | Plaintiff's Opposition to Defendant's Cross–Motion for Summary Judgment and Reply Memorandum in Support of its Motion for Summary Judgement re 32 Response to Motion, by President and Fellows of Harvard College . (Skinner, Abigail) **Modified on 1/6/2025: Corrected docket text.** (de Oliveira, Flaviana) (Entered: 01/06/2025) |
| 01/06/2025 | 37 | Statement of Material Facts L.R. 56.1 re 31 Cross MOTION for Summary Judgment , 24 MOTION for Summary Judgment *Consolidated Statement of Undisputed Facts* filed by President and Fellows of Harvard College. (Skinner, Abigail) (Entered: 01/06/2025) |
| 01/15/2025 | 38 | Assented to MOTION for Extension of Time to 01/27/2025 to File Response/Reply as to 31 Cross MOTION for Summary Judgment , 25 Memorandum in Support of Motion, 36 Response, 32 Response to Motion, 24 MOTION for Summary Judgment by Harvard Graduate Students Union – United Autoworkers, Local 5118.(Bryant, Patrick) (Entered: 01/15/2025) |
| 01/16/2025 | 39 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 38 Assented to MOTION for Extension of Time to 01/27/2025 to File Response/Reply as to 31 Cross MOTION for Summary Judgment, 25 Memorandum in Support of Motion, 36 Response, 32 Response to Motion, 24 MOTION for Summary Judgment. |

| | | |
|---|---|---|
| | | ALLOWED. Responses due by 1/27/2025. (FGD) (Entered: 01/16/2025) |
| 01/27/2025 | 40 | REPLY to Response to 31 Cross MOTION for Summary Judgment filed by Harvard Graduate Students Union – United Autoworkers, Local 5118. (Bryant, Patrick) (Entered: 01/27/2025) |
| 05/12/2025 | 41 | ELECTRONIC NOTICE Setting Hearing on Motion 24 MOTION for Summary Judgment , 31 Cross MOTION for Summary Judgment : Motion Hearing set for 5/19/2025 03:00 PM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (SED) (Entered: 05/12/2025) |
| 05/19/2025 | 42 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Motion Hearing held on 5/19/2025 re 31 Cross MOTION for Summary Judgment and 24 MOTION for Summary Judgment. The court hears arguments on the two pending motions. The motions are taken under advisement. (Court Reporter: Jamie Halpin at jkhhalpin@gmail.com.)(Attorneys present: Robert A. Fisher, Abigail Skinner, and Patrick N. Bryant) (SED) (Entered: 05/19/2025) |
| 05/23/2025 | 43 | District Judge Leo T. Sorokin: ORDER entered. ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 24 , 31 ). (FGD) (Entered: 05/23/2025) |
| 05/23/2025 | 44 | District Judge Leo T. Sorokin: ORDER entered. JUDGMENT. (FGD) (Entered: 05/23/2025) |
| 06/20/2025 | 45 | NOTICE OF APPEAL as to 44 Judgment, 43 Order on Motion for Summary Judgment, by President and Fellows of Harvard College. Filing fee: $ 605, receipt number AMADC–11078455 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 7/10/2025. (Fisher, Robert) (Entered: 06/20/2025)** |
| 06/20/2025 | 46 | MOTION to Stay re 44 Judgment *Motion to Stay Enforcement of Judgment* by President and Fellows of Harvard College.(Fisher, Robert) (Entered: 06/20/2025) |
| 06/20/2025 | 47 | MEMORANDUM in Support re 46 MOTION to Stay re 44 Judgment *Motion to Stay Enforcement of Judgment* filed by President and Fellows of Harvard College. (Fisher, Robert) (Entered: 06/20/2025) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————

PRESIDENT AND FELLOWS   )
OF HARVARD COLLEGE,    )
               )
   Plaintiff,       )
               )
v.             )   Civil No. 24-11952-LTS
               )
HARVARD GRADUATE STUDENTS )
UNION – UNITED AUTOWORKERS, )
LOCAL 5118,       )
               )
   Defendant.     )

———————————————————

<u>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 24, 31)</u>

May 22, 2025

SOROKIN, J.

   This action concerns an arbitration between President and Fellows of Harvard College

("Harvard" or the "University") and Harvard Graduate Students Union – United Autoworkers,

Local 5118 (the "Union") pursuant to their collective bargaining agreement ("CBA"). Over the

course of two decisions, Tammy Brynie, Esq., (the "Arbitrator") entered an award in the Union's

favor. Harvard now seeks vacatur of that award, while the Union seeks to confirm it. Presently

before the Court are the parties' cross motions for summary judgment. For the reasons that

follow, Harvard's Motion for Summary Judgment, Doc. No. 24, is DENIED, the Union's Cross

Motion for Summary Judgment, Doc. No. 31, is ALLOWED IN PART and DENIED IN PART,

and the arbitration award is confirmed.[1]

---

[1] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing
system ("ECF"); pincites are to the page numbers in the ECF header or to the paragraph numbers
used by the document in question. Citations to "CBA art. __ § __" refer to Doc. No. 27-5.

I.    BACKGROUND

    A.    Facts[2]

        1.    *Harvard and the Department of Psychology*

Harvard is a private research university located in Cambridge, Massachusetts.  Doc. No. 37 ¶ 1.  The instant dispute centers on graduate students in the Department of Psychology (the "Department") within Harvard's Graduate School of Arts and Sciences ("GSAS").  Id. ¶¶ 2–3.[3]

During the relevant period, the Department usually contained about seventy-five to eighty graduate students.  Doc. No. 27-2 at 14.  Earning a Ph.D. in the Department typically takes between five and seven years.  Doc. No. 27-3 at 7.  Upon admission to the Department, a graduate student is assigned to a laboratory, in which that student conducts research under the supervision of a faculty member.  Id.  The first two years of the Department's Ph.D. program focus on the student's required courses, one of which is generally affiliated with the student's laboratory assignment.  Doc. No. 37 ¶ 46; Doc. No. 27-3 at 9.  Harvard provides first- and second-year students in the Department with a stipend, funded by GSAS, to cover their living expenses.  Doc. No. 37 ¶¶ 44–45.

---

[2] The Court pulls the following facts from the Consolidated Statement of Material Facts, Doc. No. 37, filed by the parties pursuant to Local Rule 56.1, as well as the Arbitrator's decisions, the CBA, and the exhibits submitted with the parties' motions.  The Union objects to the consideration of any exhibits aside from the Arbitrator's decisions and the CBA, arguing that such exhibits are "inadmissible and irrelevant" because "[t]he facts relevant to the motions for summary judgment are limited to those facts found by the Arbitrator in her Decisions/Awards."  Doc. No. 37 at 1.  Although, generally, "an inquiring court is bound by an arbitrator's findings of fact," Mercy Hosp., Inc. v. Mass. Nurses Ass'n, 429 F.3d 338, 344 (1st Cir. 2005), the Union presents no case law to support the proposition that the Court cannot consider any exhibits outside of an arbitrator's decision to determine the validity of an arbitral award.  Cf. Bath Marine Draftsmen Ass'n, Loc. 3999 v. Bath Iron Works Corp., No. 2:06CV94 GZS, 2007 WL 293536, at *1–2 (D. Me. Feb. 1, 2007) (considering, along with collective bargaining agreement and arbitral award, five exhibits submitted as part of underlying arbitration).  The Court thus considers the submitted exhibits for context in its arbitrability analysis.

[3] The issues in this case concern doctoral students pursuing a Ph.D., yet the parties largely use the more general term "graduate students."  Following their lead, the Court does the same.

In a student's third and fourth years, Harvard offers stipend funding in exchange for the student's temporary service to the University.  Id. ¶¶ 55–56.  Service may consist of a teaching fellowship or a research assistantship under the supervision of a faculty member.  Id.  Either way, the student again receives a stipend but via Harvard's payroll system and subject to tax withholding.  Id. ¶ 58.  Positions as a teaching fellow or research assistant—and the concomitant funding—are guaranteed during a student's third and fourth years.  Thereafter, until a student's final year, the student may apply for such positions, but they are not guaranteed.

The final year of a student's Ph.D. is intended to be devoted to completing their dissertation.  Id. ¶ 52.  To that end, a student in their final year receives a Dissertation Completion Fellowship ("DCF"), another stipend to cover their living expenses and allow them to focus on their dissertation.  Id. ¶¶ 59–60.  While on a DCF, a student is not permitted to engage in any work for the University.  Id.

Throughout their studies, graduate students may also receive external funding for their education and research—that is, funding from an institution other than Harvard, such as the National Science Foundation.  Id. ¶¶ 62, 94, 97.  In such a situation, Harvard expends less money covering that student's stipend expenses, but a faculty member still oversees the student's research and related work.  Id.

### 2.   *The Union and the CBA*

In 2018, the National Labor Relations Board (the "Board" or "NLRB") certified the Union as the exclusive bargaining representative of certain Harvard students performing work for the University, including those pursuing doctorate level degrees in the Department of Psychology.  Id. ¶ 4; CBA art. 1.  Harvard and the Union then agreed to their first collective bargaining unit in 2020.  Doc. No. 27-2 at 9.  Article 1 of the current CBA—which mirrors the original in this regard—recognizes the Union as "the exclusive bargaining representative for

employees in the bargaining unit," defined to include "all students enrolled in Harvard degree programs (other than undergraduate students at Harvard College) employed by Harvard University who serve as Research Assistants (regardless of funding sources, including those compensated through Training Grants)."  CBA art. 1.  The CBA refers to members of the bargaining unit as "Student Workers" or "SWs," though it at no point defines that term.  Id. art. 2 § 1.

Article 2 of the CBA classifies Student Workers by title and pay classification.  CBA art. 2 § 1.  Relevant here is the title of "Research Assistant 1."  The duties of a Research Assistant 1 involve "perform[ing] research (including scientific rotations) under supervision of faculty/principal investigator/museum curator."  Id.[4]  The CBA requires Harvard to "provide an employment appointment letter," including "a brief description of the required research or lab duties," to all research assistants prior to their start of work.  Id. art. 3 §§ 1, 2.

The CBA also requires, per Article 18, that Harvard provide to the Union each week a list of all Student Workers who were in the bargaining unit at any point in the prior week.  Id. art. 18 § 1.  Harvard first produced such a list in September 2020.  Doc. No. 37 ¶¶ 24, 81; Doc. No. 27-2 at 14.  That original list included 4,236 Student Workers.  Doc. No. 37 ¶ 81.  By November, the list had grown to 7,764 Student Workers.  Id. ¶ 82.  The lists since have typically included approximately thirty-five Psychology graduate students.  Doc. No. 27-2 at 14.

The CBA, in Article 6, provides grievance and arbitration procedures for the resolution of disputes between Harvard and a Student Worker, group of Student Workers, or the Union.  CBA

---

[4] The CBA thus uses the terms "Research Assistants" and "Research Assistant 1," as well as "Research Assistant 2," a separate title not at issue here.  Because the differences between these terms are of no import here, the Court uses the lower-case "research assistant" to refer generally to a Student Worker in any of the three categories, except where specified.

art. 6 § 1.  These procedures cover "any dispute concerning the interpretation, application, or claimed violation(s) of a specific provision(s) of this Agreement."  Id.  The CBA sets a time limit for initiating the grievance process, though: a formal grievance must be filed "within thirty (30) business days after the event, or after the grievant should have become aware of the event, giving rise to the grievance."  Id. art. 6 § 3.  "Absent extraordinary circumstances," failure to comply with that time limit "shall constitute a forfeiture of the right to pursue the grievance and shall preclude any further processing of the grievance."  Id. art. 6 § 5.  Assuming that a grievance is timely filed, the grievance process follows three steps ("Step 1," "Step 2," and "Step 3"), culminating arbitration at Step 3.  Id. art. 6 § 4.  However, the CBA provides that "[t]he Arbitrator shall have no power to add to, subtract from, modify or disregard any of the provisions of this Agreement."  Id.

> 3.  *The Grievance*

Prior to filing the grievance that gave rise to this case, the Union filed one other grievance relevant to the parties' dispute.  That grievance (the "Individual Grievance"), filed on February 7, 2022, alleged that Harvard had unjustifiably denied a Psychology Ph.D. student (the "Individual Grievant") a letter of appointment as a research assistant in the bargaining unit.  Doc. No. 37 ¶ 28; Doc. No. 27-2 at 18; Doc. No. 27-7 at 2.  The Individual Grievant was receiving funding for his studies from a National Science Foundation grant rather than from Harvard, and the grievance form suggested that was why he had been denied a letter of appointment.  Doc. No. 27-7 at 2.  Still, according to the written grievance, the Individual Grievant was "performing research duties under the supervision of" a Department faculty member, "including but not limited to overseeing research projects, assisting in the hiring of other lab workers, and collecting data for ongoing research projects" and therefore "qualifie[d] as a Research Assistant under Article 2, Section 1."  Id.  On March 10, Harvard denied the Individual Grievance at Step 1.

Harvard addressed the source of the Individual Grievant's funding, stating, "[i]n response to the Union's request for information regarding students in the Psychology Department that are funded by NSF grants, as discussed at the Step 1 meeting, the University does not consider source of funding in determining bargaining unit eligibility." Doc. No. 27-2 at 19–20.  From the present record, it appears that Harvard did not provide an alternative explanation for the appointment-letter denial.  The Union proceeded to Step 2 of the grievance process on March 11.  Id.

While the Individual Grievance was pending, the Union began investigating whether other Student Workers in the Psychology Department were being denied classification as research assistants under the CBA.  Doc. No. 37 ¶ 85; Doc. No. 27-2 at 20.  On March 29, the Union informed Harvard of its ongoing investigation.  Doc. No. 27-2 at 20.  The Union asked whether, if the Union's investigation uncovered additional alleged improper denials, Harvard would prefer for the Union to amend the Individual Grievance to be a group grievance or rather file a new, separate grievance.  Id.  Harvard refused to take a position and requested more time to decide.  Id.  On April 18, the Union again asked Harvard how it would like to proceed "if [the Union's] investigation reveals that the issue affecting [the Individual Grievant] is affecting the entire department."  Id. at 20–21.  Harvard again demurred.  Id.

On April 30, the Union filed on behalf of several students (the "Group Grievants") the grievance that gave rise to this case (the "Group Grievance").  Doc. No. 37 ¶ 31.  In the Group Grievance, the Union alleged that:

> Starting in the spring term of 2022, the Union noticed that the student workers in Psychology engaged in research work were left off the weekly bargaining unit lists.  Additionally, some student workers in the department were deemed ineligible for Union benefit funds in spring 2022 as a result of not appearing on these lists and not receiving RA appointment letters.

Doc. No. 27-8 at 3.  As remedy, the Union requested that Harvard "include all Psychology student workers engaged in all bargaining unit work, including all research work, in the bargaining unit."  Id.

Thereafter, both the Individual Grievance and the Group Grievance proceeded through the CBA's grievance process.  In August, Harvard denied both grievances at Step 2.  Doc. No. 27-2 at 22; Doc. No. 27-15 at 2.  The Union then appealed only the Group Grievance to arbitration.  Doc. No. 27-2 at 22.

4.    *The Arbitration*

Harvard and the Union could not agree on the issues to be submitted to arbitration. Instead, the parties allowed the Arbitrator to frame the issues.  Doc. No. 27-2 at 2–3.  Ultimately, the Arbitrator settled on the following issues: (1) "Is this grievance timely filed?"; (2) "If so, did the University violate the CBA by failing to classify psychology PhD students as Research Assistants under Article 1 and/or Research Assistant[s] 1 under Article 2?"; and (3) "If so, what shall be the remedy?"  Doc. No. 27-2 at 3.

After four hearings held by video between July and October 2023, the Arbitrator split her findings into two parts.  In the first (the "Timeliness Decision"), issued May 20, 2024, the Arbitrator found that the Group Grievance had been timely filed at Step 1 in line with CBA procedures.  See generally Doc. No. 27-2.  The Arbitrator rejected Harvard's argument that the weekly lists Harvard produced put the Union on notice as early as the fall of 2020 that Harvard was not designating the Group Grievants as research assistants under the CBA.  Id. at 29–30. Even if those lists had provided sufficient notice, the Arbitrator ruled, the "extraordinary circumstances" exception to Article 6's timeliness requirement would apply to the Group Grievance.  Id. at 30–32.  Finally, the Arbitrator concluded, "[t]o the extent there is a concern

7

that the instant grievance was filed beyond the contractual 30 business day limit, it is unclear what 'event' would trigger that time limit." Id. at 33.

In the second decision (the "Merits Decision"), handed down on June 28, the Arbitrator also found in the Union's favor. See generally Doc. No. 27-3. To begin with, the Arbitrator recognized that her role was "to interpret and apply the provisions of [the] negotiated agreement." Id. at 30. The Arbitrator then rejected Harvard's argument that the Group Grievance was not substantively arbitrable absent a determination that the Group Grievants were "employees" under the National Labor Relations Act ("NLRA"). Id. at 31. Turning to the issue at hand, the Arbitrator found that "lab-based psychology graduate students meet the negotiated contractual parameters for inclusion within the bargaining unit." Id. at 37. As a result, she determined that "the University has violated the collective bargaining agreement by failing to classify psychology PhD students conducting research as Research Assistants under Article 1 and/or as Research Assistant[s] 1 under Article 2." Id. As remedy, the Arbitrator directed Harvard to "make lab-based psychology students whole, by considering them to be Research Assistant[s] as of April 30, 2022," and by paying them any lost benefits from that date forward. Id. at 37–38.

B.    Procedural Posture

Unsatisfied, Harvard brought suit in this Court on July 29, 2024, seeking to vacate both the Timeliness Decision and the Merits Decision pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. After conferral, the parties agreed that no discovery would be needed in this case and that the case could be resolved via cross motions for summary judgment. Doc. No. 16 at 1–2. Harvard filed its Motion for Summary Judgment seeking vacatur of the award on October 31. The Union responded with its Cross Motion for Summary Judgment on December 9, asking the Court to deny Harvard's Motion, confirm the

award, and enter an order requiring Harvard to pay costs, attorney's fees, and interest on the award. The Court held oral argument on the cross motions on May 19, 2025. The cross motions now being ripe, the Court turns to the task at hand.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a court, as here, confronts cross motions for summary judgment, the standard remains unchanged: the court must "view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." Motorists Com. Mut. Ins. Co. v. Hartwell, 53 F.4th 730, 734 (1st Cir. 2022).

Here, the cross motions concern a labor arbitration award. Judicial review of such an award is "extremely narrow and extraordinarily deferential." Providence J. Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st Cir. 2001). That is because "both parties have contracted to have disputes settled by an arbitrator and therefore it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." UMass Mem'l Med. Ctr., Inc. v. United Food And Com. Workers Union, 527 F.3d 1, 5 (1st Cir. 2008). As such, a party seeking to vacate an arbitration award "must clear a high hurdle." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010). Courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. Instead, a court may vacate an award only on a few, tightly circumscribed grounds, two of which are germane to this case.

9

First, a court may vacate an award that "contravenes the plain language of the applicable contract." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 33 (1st Cir. 2006). To be clear, "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 764 (1983). Instead, the question is whether the award "draw[s] its essence from the contract." Misco, 484 U.S. 38. If it does, vacatur is not appropriate on this ground.

Second, "a court may vacate an arbitral award that violates public policy." Mercy Hosp., 429 F.3d at 343. This ground for vacatur "is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." Bos. Med. Ctr. v. Serv. Emps. Int'l Union, Loc. 285, 260 F.3d 16, 23 (1st Cir. 2001) (quoting Misco, 484 U.S. at 42). But this exception to the general judicial presumption in favor of arbitration is "narrow." Mercy Hosp., 429 F.3d at 343. "The award must violate an explicit[,] well defined and dominant public policy, as ascertained by reference to laws and legal precedents." Id. (cleaned up). And this public-policy vacatur must be applied "in light of background labor law policy," which favors the arbitration of labor-management disputes. E. Associated Coal Corp. v. UMW, Dist. 17, 531 U.S. 57, 65 (2000).

III.    DISCUSSION

Harvard raises three broad arguments as to why the Court should vacate the Arbitrator's award. First, Harvard says, the Group Grievance was not substantively arbitrable because the Group Grievants did not fall within the bargaining unit of the CBA. Second, it contends that the Group Grievance was not procedurally arbitrable because the Group Grievance was untimely filed. And third, in Harvard's view, the award must be vacated because it contravened public policy. The first and second arguments invoke the plain-language ground for vacatur, while the

third argument rests on public policy.  On each argument, though, Harvard fails to justify

vacating the award under the exceptionally narrow and deferential standard of review applied to

arbitral awards.[5]

A.    Substantive Arbitrability

Harvard principally makes a substantive-arbitrability argument.  "Substantive

arbitrability refers to whether a dispute involves a subject matter that the parties have

contractually agreed to submit to arbitration."  Loc. 285, Serv. Emps. Int'l Union v. Nonotuck

Res. Assocs., 64 F.3d 735, 738 (1st Cir. 1995).  Here, Harvard contends that the Group

Grievance was not substantively arbitrable for two reasons.  First, Harvard asserts, to be in the

bargaining unit and invoke the CBA's arbitration procedures, the Group Grievants must be

"employees" under the NLRA.  But only the Board can determine the Group Grievants'

"employee" status, and no such determination has been made, so the Arbitrator could not

adjudicate this grievance.  Second, even if a Board determination was not required, Harvard

insists that, under the CBA, the Group Grievants must be "employed by" Harvard to be in the

bargaining unit.  In Harvard's view, the Arbitrator failed to consider this issue and so committed

vacatable error.  Both of these arguments rest on the premise that the Group Grievants cannot be

---

[5] The Union contends, in a single paragraph of its papers, that the Court lacks authority to vacate
the arbitral award because Harvard's arguments for doing so implicate representational issues
committed to the primary jurisdiction of the Board.  Doc. No. 32 at 22.  That is not so.
Representational issues comprise the "determination of appropriate bargaining units."  United
Ass'n of Journeymen, Loc. 342 v. Valley Eng'rs, 975 F.2d 611, 614 (9th Cir. 1992), as
amended (Oct. 16, 1992).  But here, Harvard does not ask the Court to determine whether the
Grievants were within the bargaining unit.  Rather, Harvard raises questions over whether such a
determination was required before arbitration could proceed and, if so, whether the Arbitrator
could make that determination.  These are issues properly before the Court.  See Mass. Nurses
Ass'n v. N. Adams Reg'l Hosp., 467 F.3d 27, 29 (1st Cir. 2006) ("[W]here, as here, a collective
bargaining agreement contains an arbitration clause, an arbitral award is akin to a contractual
obligation that can be enforced through a civil action under section 301.").  The Court therefore
proceeds to the merits.

"employees" of or "employed by" Harvard because they do not perform work for Harvard in exchange for compensation; rather, they conduct laboratory research for their own academic advancement, and their funding does not depend on their work in the laboratory. However, the Arbitrator's findings contradict that premise, and neither of Harvard's arguments strikes strong enough to topple her award.

        1.   *The Group Grievants as "Employees" under the NLRA*

Harvard maintains that the Arbitrator lacked authority to determine the Group Grievants' "employee" status under the NLRA and therefore lacked authority to find that they were Student Workers under the CBA. The Court disagrees.

The NLRA "is a comprehensive code passed by Congress to regulate labor relations" and is interpreted and administered by the Board. Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995). Under the NLRA, "employees" have "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. In broad strokes, when employees seek to unionize, they can petition the Board to certify their chosen union and require their employer to collectively bargain with the union. 29 U.S.C. § 159(c)(1); 29 C.F.R. § 102.60(a). Where a union has already been certified, the union or the employer may file a petition for the Board to clarify or amend the certified bargaining unit. 29 C.F.R. § 102.60(b). The Board has primary jurisdiction over these representational issues. Newspaper Guild, Loc. 105 v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1283 (1st Cir. 1996).

The NLRA extends the right to unionize only to "employees." In Trustees of Columbia University, the Board stated that: "Where student assistants have an employment relationship with their university under the common law test . . . this relationship is sufficient to establish that

the student assistant is a Section 2(3) employee for all statutory purposes." 364 NLRB 1080, 1083 (2016).  The Board then clarified that, "[c]ommon-law employment . . . generally requires that the employer have the right to control the employee's work, and that the work be performed in exchange for compensation."  Id. at 1094.  However, that one is not an "employee" under the NLRA does not foreclose one from unionizing; it only means that one's employer is not required to bargain with one's chosen union.  See id. at 1089 (observing that at least one university and its graduate-assistants union continued to collectively bargain even after the Board determined that graduate assistants were not "employees" under the NLRA); see also Hotel & Rest. Emps. Union Loc. 217 v. J.P. Morgan Hotel, 996 F.2d 561, 566 (2d Cir. 1993) (noting that, even absent Board certification, "an employer and labor organization are not thereby foreclosed from reaching a private agreement on union recognition").

In light of this governing law, Harvard argues along the following lines: (1) the CBA— including its arbitration provision—only covers "employees" under the NLRA; (2) the Group Grievants comprise four categories of students—first-year students, second-year students, students on DCFs, and students receiving only external funding—who do not perform work in exchange for compensation and so arguably are not "employees" under the NLRA; (3) only the NLRB can determine whether the Group Grievants are "employees" under the NLRA; and (4) the Arbitrator therefore lacked the authority to adjudicate the Group Grievance.  But this relay-race of reasoning stumbles at the starting block: the CBA is not undisputably limited to "employees" under the NLRA.

The Arbitrator considered and rejected Harvard's argument about this threshold "employee" inquiry.  She recognized that her role was "to interpret and apply the provisions of [the parties'] negotiated agreement."  Doc. No. 27-3 at 30.  And in her view, those provisions did

not require that the Group Grievants be "employees" under the Board's <u>Columbia University</u>

decision.  <u>Id.</u> at 32.  That is, the Arbitrator determined that the bargaining unit was defined by the

CBA and that determining who fell within that bargaining unit depended solely on interpretation

of the CBA rather than NLRB case law.  In reaching that conclusion, the Arbitrator reasoned that

"the parties have already addressed the contours of the bargaining unit"—i.e., in their

certification proceedings before the Board—and "negotiated contracts and refined language

relating to bargaining unit eligibility."  <u>Id.</u> at 31.[6]  In contrast, the Group Grievance, she noted,

"alleges that the collective bargaining agreement has been violated by the University's failure to

classify psychology PhD students conducting research as Research Assistants under Article 1

and/or as Research Assistant 1 under Article 2."  <u>Id.</u> at 31–32.  That, she intimated, was a

contractual dispute, and "[a]s a contract arbitrator," she would not "revisit or disturb" the

definition of the collective bargaining unit.  <u>Id.</u> at 32.

    That conclusion—that the CBA did not require a threshold determination of "employee"

status—amounted to a plausible interpretation of the parties' agreement.  Article 1, defining the

bargaining unit, does require members to be "employed by" Harvard, but it nowhere refers to the

Board's <u>Columbia University</u> decision defining "employee" status for graduate assistants under

the NLRA.  Cf. <u>Challenger Caribbean Corp. v. Union Gen. de Trabajadores de P.R.</u>, <u>903 F.2d</u>

<u>857, 866</u> (1st Ci<u>r. 1990)</u> ("While it is true that an arbitrator has no general authority to invoke

---

[6] As to the certification proceedings, the Arbitrator referred to a decision of the NLRB Regional Director deeming first-year Organismic and Evolutionary Biology graduate students engaged in research work at Harvard eligible to participate in the election of the Union.  <u>Doc. No. 27-3 at 31</u> n.7; <u>see also</u> <u>Doc. No. 32-2 at 13</u>–15 (Regional Director's decision).  As to negotiations, the Arbitrator noted that "[d]octoral students on laboratory rotations are now included within the bargaining unit," apparently implying that rotation-based students were not within the bargaining unit as presented to the NLRB—a proposition which the Union, at oral argument, put forth as evidence that the bargaining unit encompasses more than just NLRB-defined "employees."  <u>Doc. No. 27-3 at 31</u> n.8.

public laws that conflict with the bargain between the parties, . . . the parties to a collective bargaining agreement may confer such authority upon an arbitrator." (quotations omitted)).  And the parties clearly knew how to incorporate NLRA definitions: excluded from the bargaining unit, per Article 1, are "[a]ll graduate students serving as research assistants and all other employees, guards and supervisors as defined in the Act."  CBA Art. 1.[7]  Absent such clear invocation of the NLRA as to "employee" status, the Arbitrator could conclude that the parties did not intend to incorporate the Board's definition of "employee" into Article 1.

Moreover, the jurisdictional limits on arbitration under the CBA could support this restricted reading.  The CBA limits arbitrable disputes to those "concerning the interpretation, the application, or claimed violation(s) of a specific provision(s) of this Agreement."  Id. art. 6 § 1.  It further provides that "[t]he Arbitrator shall have no power to add to, subtract from, modify or disregard any of the provisions of this Agreement."  Id. art. 6 § 4 (emphasis added). From this, the Arbitrator could plausibly deduce that, because the CBA does not explicitly incorporate the NLRB's definition of "employee," she could not read an NLRB "employee" determination requirement into Article 1.  See Roadmaster Corp. v. Prod. & Maint. Employees' Loc. 504, 851 F.2d 886, 889 (7th Cir. 1988) ("When a contract, such as the one involved here, specifically limits an arbitrator's subject matter jurisdiction, the arbitrator should restrict his consideration to the contract, even if such a decision conflicts with federal statutory law.").

To be clear, this is not the only reasonable interpretation of the CBA.  The Arbitrator could have looked at the parties' bargaining history—including the certification of the bargaining unit by the Board—and interpreted Article 1's "employed by" language to incorporate the Board's "employee" test.  That was not a required reading of the CBA, though.  As mentioned,

---

[7] The CBA does not define "the Act," but the Court reasonably infers that it refers to the NLRA.

that the NLRA guarantees the right to unionize only to "employees" does not mean that only "employees" can be covered by the CBA.[8]  This Court cannot, therefore, overturn the Arbitrator's decision simply because she found an "employee" status determination unnecessary under the CBA.

Granted, the Arbitrator did not lay out all of this analysis, but she was not required to under federal law.  "[A]n arbitrator has no duty to set forth the reasons underlying [her] award." FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 77 (1st Cir. 2011) (quotations omitted).  After all, it is an arbitrator's award, not her reasoning, that matter.  Lab. Rels. Div. of Const. Indus. of Mass., Inc. v. Int'l Bhd. of Teamsters, Loc. No. 379, 29 F.3d 742, 747 (1st Cir. 1994) ("We see no problem with upholding the arbitrator's decision on grounds or reasoning not employed by the arbitrator himself.").  As such, a court will not set aside an award so long as it can discern "any plausible basis for the arbitrator's interpretation."  Nat'l Ass'n of Gov't Emps. v. Nat'l Emergency Med. Servs. Ass'n, 84 F. Supp. 3d 43, 49 (D. Mass. 2015) (citing Coastal Oil of New England, Inc. v. Teamsters Loc., 134 F.3d 466, 469 (1st Cir. 1998)).  Here, as shown, there is a plausible basis under the CBA for the Arbitrator's outcome, and that suffices.

---

[8] Nor does the NLRA's procedure for certifying or clarifying a bargaining unit preclude the Arbitrator's reading.  See Apollo Sys., Inc., 360 NLRB 687, 688 (2014) (refusing to consider unit clarification petition "in the presence of what is, in fact, a contractual dispute").  As the Board has explained, unit clarification "is appropriate for resolving ambiguities concerning the unit placement of individuals who . . . come within a newly established classification of disputed unit placement or, within an existing classification which has undergone recent, substantial changes in the duties and responsibilities of the employees in it."  Union Elec. Co., 217 NLRB 666, 667 (1975).  "Clarification is not appropriate, however, for upsetting an agreement of a union and employer or an established practice of such parties concerning the unit placement of various individuals."  Id.  Because the Group Grievants are not in a newly established classification or a classification that has undergone recent change, clarification would not seem appropriate.  In any event, if Harvard believes the Group Grievants are not in the bargaining unit, it remains free to bring a clarification petition of its own.  See Apollo Sys., Inc. 360 NLRB at 687 (considering employer-filed petition for clarification that certain employees were not in previously certified bargaining unit).

2.    *The Group Grievants as "Employed by" Harvard under the CBA*

As an alternative, Harvard claims that the Arbitrator contravened the plain language of the CBA because she failed to address the question of whether the Group Grievants are "employed by" Harvard under the CBA. This tact fares no better than the first.

At the outset, Harvard assumes that this "employed by" language incorporated the common-law "employee" test used by the Board in Columbia University. As discussed above, though, the Arbitrator plausibly concluded that a common-law "employee" status determination was not mandated by the CBA. Since the CBA nowhere else defines "employed by," interpretation of that language lay in the Arbitrator's demesne. See Ne. Univ. v. Serv. Emps. Int'l Union, Loc. 509, No. CV 20-10825-LTS, 2021 WL 2813828, at *5 (D. Mass. May 24, 2021) (confirming award where arbitrator interpreted term undefined by agreement).

Still, Harvard insists, the Arbitrator could not ignore Article 1's requirement that, to be in the bargaining unit, a person must be "employed by" Harvard. True, the Arbitrator did not clearly delineate between her analysis of Article 1's bargaining unit and Article 2's "Research Assistant 1" classification. The Arbitrator did not completely ignore Article 1, though. Her conclusions in the Merits Decision were twofold:

> Overall, I am convinced that lab-based psychology graduate students meet the negotiated contractual parameters for inclusion within the bargaining unit. I also determine that the University has violated the collective bargaining agreement by failing to classify psychology PhD students conducting research as Research Assistants under Article 1 and/or as Research Assistant[s] 1 under Article 2.

Doc. No. 27-3 at 37. In other words, the Arbitrator found: (1) that the Group Grievants were within Article 1's bargaining unit; and (2) that the Group Grievants qualified as research assistants under the CBA generally. The former finding encompasses the "employed by" requirement.

17

That finding, furthermore, was plausible.  The Arbitrator weighed the duties the Group Grievants performed in their roles, Doc. No. 27-3 at 32, which comports with the CBA's definitions, see CBA art. 2 § 1 (classifying Student Workers by "the nature of duties").  Her analysis also considered the parties' past practices with regard to classifying similarly situated laboratory-based students outside the Department of Psychology as members of the bargaining unit.  Doc. No. 27-3 at 32–35.  That Harvard conceded the bargaining-unit status of other Student Workers performing the same work in the same laboratories supports the conclusion that the parties intended the bargaining unit to encompass the Group Grievants.  See Providence J. Co., 271 F.3d at 21 ("Because this Court allows arbitrators to use past practice as an interpretive device or as relevant evidence, we find no error here.").  And the Arbitrator looked to other parts of the CBA to conclude that "[t]he parties have, through their negotiations, rejected a binary distinction between academic and employment work."  Doc. No. 27-3 at 35.  Plainly, no error inheres in considering the CBA as a whole, rather than Article 1 in isolation.  See Ne. Univ. v. Serv. Emps. In"l Union, Loc. 509, No. CV 20-10825-LTS, 2021 WL 2813828, at *5 (D. Mass. May 24, 2021) ("[T]he arbitrator appropriately endeavored to interpret the relevant portions of Appendix B by considering the CBA as a whole and the evidence before him.").

The conclusion that the Group Grievants are "employed by" Harvard is not otherwise foreclosed by the CBA, either.  Article 1 makes "funding sources" irrelevant for bargaining-unit status, so the fact that a Student Worker may not be paid directly by Harvard or may not have their funding tied to the performance of their research-assistant work does not bar them from being "employed by" Harvard under the CBA.  Likewise, nothing in these parties' past bargaining history indicates an express intent to exclude the Group Grievants.  Cf. Mass. Inst. of Tech., Case 01-RC-304042, at 1 (N.L.R.B. Mar. 13, 2023),

https://apps.nlrb.gov/link/document.aspx/09031d45839e5719 [https://perma.cc/JX8E-DFJX]
(noting that, prior to certification, MIT and its union had stipulated to exclusion of graduate
fellows akin to Group Grievants); see also Loc. 1199, Drug, Hosp. & Health Care Emps. Union
v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992) ("It is well settled that the arbitrator . . . may
interpret the CBA in light of the parties' intent revealed through bargaining history, past
practices, rights established under earlier agreements, and other rudimentary sources of contract
construction." (cleaned up)).  And the Arbitrator considered—and rejected, in light of a lack of
evidence—Harvard's argument that the award would negatively impact international students.
See Doc. No. 27-3 at 36–37.

      Harvard, with some basis, complains that the Arbitrator's decision places within the
bargaining unit laboratory-based students who perform no work for Harvard.  Specifically,
Harvard points to first-year, second-year, and DCF students, whose laboratory time is intended to
advance their own academic projects or dissertations.  Yet the Arbitrator's decision addressed
this complaint, if implicitly so.  The Arbitrator found that Psychology graduate students are
immediately assigned to a laboratory upon joining the Department and that laboratory-based
students conduct research in a "collaborative environment."  Doc. No. 27-3 at 33.  This
collaboration, the Arbitrator further found, includes participation in faculty members' research.
Id.  Such participation, in the Arbitrator's words, is "a research expectation."  Id.  Thus, even if
first-year, second-year, and DCF students are ostensibly focused on their own research in the
laboratory, they inevitably, per the Arbitrator's findings, perform work for faculty members and,
by extension, Harvard.[9]

---

[9] Harvard also argues that the Arbitrator ignored "the Union's concession that students on a DCF
are not within the bargaining unit."  Doc. No. 25 at 14 n.8.  But the Union made no such
concession.  Instead, a member of the Union's executive board, testifying before the Arbitrator,

Again, the Arbitrator's interpretation is not the only way to read the CBA, and her reasoning as to this point was, at best, only faintly sketched. Her decision did, however, draw its essence from the CBA. Accordingly, this Court "is bound to enforce the award and is not entitled to review the merits of the contract dispute." W.R. Grace & Co., 461 U.S. at 764. "This remains so even when"—as here—"the arbitrator's decision may be ambiguous." Id. The Court therefore declines to vacate the Arbitrator's substantive-arbitrability decision.

   B.    Procedural Arbitrability

As to procedural arbitrability, Harvard argues that the Arbitrator contravened the plain language of the CBA by failing to find the Group Grievance untimely. "[I]ssues concerning the timeliness of a filed grievance are classic procedural questions to be decided by an arbitrator." Nonotuck, 64 F.3d at 739 (quotations omitted). That being so, the Court must defer to the Arbitrator's findings of fact and interpretation of contractual language unless the Arbitrator's Timeliness Decision did not "draw its essence" from the CBA. Misco, 484 U.S. at 38. Under that standard, the Court finds no reason to vacate the award on procedural-arbitrability grounds.

To start, the Arbitrator unequivocally construed and applied the CBA's procedural provisions in determining that Harvard's weekly lists of Student Workers did not start the thirty-day timeliness clock in the fall of 2020. The decision incorporated the relevant CBA provisions, including Article 6's requirement that any formal grievance be filed "within thirty (30) business days after the event, or after the grievant should have become aware of the event giving rise to the grievance." Doc. No. 27-2 at 6 (quoting CBA art. 6 § 3). The Arbitrator then noted the size of the weekly lists in the fall of 2020, as well as the inclusion of at least two Student Workers from the Psychology Department as research assistants on the November 11, 2020 list. Id. at 30.

---

merely recognized that this specific grievance did not address the bargaining-unit status of students on DCFs. Doc. No. 27-1 at 7.

"As a result," the Arbitrator found, "the early weekly rosters/spreadsheets did not provide sufficient notice that lab-based Psychology PhD students were not classified or appointed as Research Assistants." Id. This was a plausible interpretation and application of the CBA that this Court will not disturb.

The Arbitrator's invocation of the "extraordinary circumstances" proviso does not undercut her reasoning. Harvard argues that the Arbitrator's application of that proviso was illogical because it only applies where a grievance is untimely filed, and the Arbitrator found the Group Grievance was timely filed. But that is a misreading of the Timeliness Decision. The Arbitrator, after finding the weekly lists did not make the Group Grievance untimely, stated: "Moreover, I am persuaded that the 'extraordinary circumstances' proviso found at Article 6, Section 5 is applicable here." Doc. No. 27-2 at 30–31. This was not illogic; it was reasoning in the alternative, a common practice in legal analysis.

The Court otherwise sees no reason to overturn the Timeliness Decision. Harvard argues that the Arbitrator should have found the Group Grievance untimely because the Union had sufficient notice of the events giving rise to that grievance by the time it filed the Individual Grievance on February 7, 2022—more than thirty days before the Group Grievance was filed. On the record before the Court, Harvard does not seem to have made this argument to the Arbitrator. See Doc. No. 32-1 at 17–29 (briefing timeliness issue for the Arbitrator without addressing effect of Individual Grievance). Anyway, the Arbitrator clearly found that the Group Grievance was generally timely. See Doc. No. 27-2 at 33 ("To the extent there is a concern that the instant grievance was filed beyond the contractual 30 business day limit, it is unclear what 'event' would trigger that time limit."). The Arbitrator did not directly address the Individual

21

Grievance's impact on the timeliness issue, but, as mentioned, "an arbitrator has no duty to set forth the reasons underlying [her] award." FleetBoston, 638 F.3d at 77.

The Court finds a plausible basis for concluding that the filing of the Individual Grievance did not start the thirty-day countdown. See Berklee Coll. of Music v. Mass. Fed'n of Tchrs., Loc. 4412, 858 F.2d 31, 34 (1st Cir. 1988) (upholding arbitrator's "plausible" determination that grievance filed fifteen days after relevant action was timely notwithstanding contract provision requiring filing within ten days of action). The Individual Grievance concerned the denial of an appointment letter and focused on the Individual Grievant's source of funding. The Group Grievance included students not at issue in the Individual Grievance, concerned omissions from the weekly lists, and did not focus on the source of the Group Grievants' funding. The Union's March 29 and April 18 messages to Harvard also indicate that it had not yet identified additional grievances. Given these facts, it is entirely plausible to reason that the Individual Grievance did not put the Union on notice of the events giving rise to the Group Grievance.[10] This is sufficient, on the Court's limited review, to confirm the Arbitrator's Timeliness Decision.[11]

---

[10] Under "Date of Alleged Violation," on the written grievance form, the Union listed "Ongoing (first noticed around 3/24/2022)." Doc. No. 27-8 at 3. In the context of the Union's messages to Harvard about its investigation, this could plausibly be read as referring to the date on which the Union began investigating the grievance, rather than the date on which it knew, or should have known, of the event giving rise to the grievance.

[11] In a footnote of its supporting memorandum, Harvard also argues that the Arbitrator's decision to include the Individual Grievant in the bargaining unit should be vacated because the Union chose not to bring the Individual Grievance to arbitration. Doc. No. 25 at 19 n.10. Harvard already agreed that the Individual Grievant was within the Group Grievance, though. The stipulated facts filed in the arbitration state that "[t]he Union did not file for arbitration with regard to this [individual] grievance, however, [the Individual Grievant] falls within the class at issue in this case." Doc. No. 27-6 ¶ 40. In light of that concession, the Court cannot fault the Arbitrator's decision as to the Individual Grievant.

C.    <u>Public Policy</u>

Even if the Group Grievance was substantively and procedurally arbitrable, Harvard argues, the Arbitrator's award must be vacated because it conflicts with public policy.  In so arguing, Harvard invokes the public-policy exception to the enforcement of arbitral awards, identifying a policy "established in the NLRA, to protect the rights of employees to decide whether or not they wish to be represented by a labor union."  <u>Doc. No. 25 at 19</u>.  Harvard breaks that policy into "two fundamental principles": (1) "that only 'employees' have the right to unionize"; and (2) "that employees have the right to decide whether they wish to be represented by a union."  <u>Id.</u> at 20.  Assuming, arguendo, that these principles constitute an explicit, well-defined, and dominant public policy, ascertainable by reference to the NLRA and federal case law, the Arbitrator's award does not violate that policy.

First, the Arbitrator's recognition of the Group Grievants as research assistants within the bargaining unit does not conflict with the principle that only "employees" have the right to unionize.  Harvard's argument to the contrary confuses the right to unionize with the ability to unionize, which—as covered above—non-employees retain, the NLRA notwithstanding.  The Arbitrator's award does not grant the Group Grievants the right to unionize; it merely acknowledges that they are within the definition of a bargaining unit already agreed upon by Harvard.

Second, the Arbitrator's award does not deprive the Group Grievants of the opportunity to decide for themselves whether they wish to be represented by a union.  The CBA grants to each new member of the bargaining unit "the choice to affirm choosing to join the union or not for each appointment period" and to each current member the choice to "opt out," all without "fee[s] or further consequences" for those who choose not to join the Union.  CBA art. 33 § 2. Vacatur of the award would rob the Group Grievants of this choice.  That would truly transgress

public policy.  See Columbia Univ., 364 NLRB at 1085 ("Permitting student assistants to choose whether they wish to engage in collective bargaining—not prohibiting it—would further the Act's policies." (emphasis in original)).  Seeing as the award violates neither principle identified by Harvard, the public-policy exception to judicial enforcement of arbitral awards does not apply in this case.

### D.    Costs, Attorney's Fees, and Interest

Having disposed of Harvard's requests to vacate the Arbitrator's award, the Court turns to the Union's request for costs, attorney's fees, and interest.

As to costs, the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs —other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Because Harvard has provided no reason not to, the Court awards the Union costs in this matter.

As to attorney's fees, a court may, in its discretion, award the prevailing party its attorney's fees if the losing party's actions were "frivolous, unreasonable, or without foundation."  Nontuck, 64 F.3d at 737 (quotations omitted).  Harvard's actions do not rise to that level.  The issues in this case are complicated, and the Arbitrator's decisions did not comprehensively explain the resolution of each issue.  Furthermore, no precedent on point directly contradicts Harvard's arguments so as to make them frivolous or unreasonable..  Loc. 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 100–01 (1st Cir. 2006) (affirming denial of fees where losing party's "main position" was "at least colorable and not frivolous" with "support from at least one circuit"), with Nontuck, 64 F.3d at 739 (reversing denial of fees where "the law is clear, and has been for some time").  For these reasons, the Court denies the Union's request for attorney's fees.

24

Finally, as to interest, the decision to award "prejudgment interest on an arbitrator's award of back pay is within the equitable power and discretion of the Court." Wynn MA, LLC v. Unite Here!, Loc. 26, No. 23-CV-11223-ADB, 2024 WL 2962805, at *10 (D. Mass. June 12, 2024) (quotations omitted).  Assuming that the Arbitrator's award of "lost benefits and payments" constitutes back pay, the Court declines to order the payment of interest here.  The Arbitrator did not include interest in the award, Harvard's application for vacatur was not frivolous, and the Court sees no other grounds for such an order.  See Ne. Univ., 2021 WL 2813828, at *6 (declining to award interest under similar circumstances).  The Union's request for costs is ALLOWED, but its requests for attorney's fees and interest are DENIED.

IV.    CONCLUSION

Because Harvard has fallen short of the high hurdle necessary to justify vacatur of an arbitral award, the Court DENIES Harvard's Motion for Summary Judgment, Doc. No. 24, and ALLOWS the Union's Cross Motion for Summary Judgment, Doc. No. 31, except to the extent that the Union requests an award of attorney's fees and interest.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

President and Fellows of Harvard College,
                Plaintiff,


      v.

                            Civil Action No. 1:24-11952-LTS

Harvard Graduate Students Union –
United Autoworkers, Local 5118,
                Defendant.
_____


<u>JUDGMENT</u>

May 23, 2025


SOROKIN, D.J.

      Pursuant to the Court's May 22, 2025, Order on Cross Motions for Summary Judgement, Doc. No. 43, judgment shall enter in favor of Defendant and against Plaintiff. The Court confirms the arbitration award.

      Each side shall bear its own fees. Plaintiff shall pay Defendant's costs without interest.


                SO ORDERED.


                /s/ Leo T. Sorokin
                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | |
| Plaintiff, | |
| v. | Civil Action No.  1:24-CV-11952-LTS |
| HARVARD GRADUATE STUDENTS UNION - UNITED AUTO WORKERS, LOCAL 5118, | |
| Defendant. | |

<u>**PLAINTIFF PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S**</u>
<u>**NOTICE OF APPEAL**</u>

Notice is hereby given that the Plaintiff, President and Fellows of Harvard College (the "University"), appeals to the United States Court of Appeals for the First Circuit from this Court's Final Judgment in this matter, dated May 22, 2025 (Dkt. 44), and certain of this Court's interim findings that led thereto, including the Court's May 23, 2025 Order on Cross-Motions for Summary Judgment (Dkt. 43).

In furtherance of this appeal, on June 20, 2025, the University moved this Court to stay execution of the Final Judgment and relieve the University of the requirement to post a bond. That motion remains pending as of the date of this Notice.

318412458v.1

DATED: June 20, 2025                     Respectfully submitted,

                                         By Its Attorneys,

                                         */s/ Robert A. Fisher*
                                         Robert A. Fisher, BBO #643797
                                         rfisher@seyfarth.com
                                         Abigail Skinner, BBO #709705
                                         askinner@seyfarth.com
                                         John T. Ayers-Mann, BBO #703184
                                         jayers-mann@seyfarth.com
                                         SEYFARTH SHAW LLP
                                         Seaport East
                                         Two Seaport Lane, Suite 1200
                                         Boston, Massachusetts 02210-2028
                                         Telephone:  (617) 946-4800
                                         Facsimile:   (617) 946-4801


## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                         */s/ Robert A. Fisher*
                                         Robert A. Fisher

318412458v.1